UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                           :

JAMAAL RUSS, et al.,                   :

                Plaintiffs,       :

                           :           25-CV-05447 (JAV)

       -v-                   :

                           :        <u>OPINION AND ORDER</u>

NIKE, INC.,                     :

                           :

                Defendant.     :

-------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

On June 26, 2025, Plaintiff and Counterclaim-Defendant Jamaal Russ ("Russ" or "Plaintiff") initiated this action against Defendant and Counterclaim-Plaintiff Nike, Inc. ("Nike" or "Defendant"), alleging infringement of his trademark, "DENARO PURO."  ECF No. 1, ¶ 1.  In its First Amended Answer, Nike raised several affirmative defenses and initiated counterclaims against both Russ and Denaro Puro LLC, alleging that their sale and promotion of certain shoes infringed on Nike's trade dress rights in a shoe line's silhouette.  ECF No. 22 ("Am. Ans."), at 6-9, 14, 19-26.  After several amendments, Russ's operative Third Amended Complaint intentionally withdrew all infringement and dilution claims against Nike and instead alleged that Nike continues to unlawfully threaten him with its own infringement and dilution claims.  *See* ECF No. 83 ("Third Amended Complaint" or "TAC"), ¶¶ 32-50.  Nike now moves to dismiss Counts I, II, IV, and V from Russ's Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and

12(b)(6).  ECF No. 85 ("Motion to Dismiss" or "Mot.") at 1.  For the reasons stated below, the Motion to Dismiss is **GRANTED**.

BACKGROUND

The following facts are derived from Russ's pleadings.[1]

Russ is the "founder and creative director of the DENARO PURO brand," and Denaro Puro LLC is a limited liability corporation, operating to "develop and commercialize footwear, apparel, and related creative works."  TAC, ¶¶ 9-10.  Since 2022, Russ has owned a federally registered trademark in the designation "DENARO PURO" for use in branding apparel—including, as relevant here, footwear.  *Id.*, ¶ 14; ECF No. 29 ("SAC"), ¶ 10.  "DENARO PURO" is an Italian phrase, translating to "Pure Money" in English.  TAC, ¶ 12.

Nike designs, manufactures, and sells footwear, including a shoe line known as Air Jordan 4s ("AJ4").  *See* SAC, ¶ 7; ECF No. 29-1 at 5-8, 10-16.  Since approximately 2007, Nike has intermittently used the phrase "Pure Money" in commerce as a "descriptor" of, or otherwise in connection with, certain AJ4 colorways.  TAC, ¶¶ 15-16.  In this action, Nike does not purport to own a trademark in the "Pure Money" designation.  *See id.*, ¶¶ 16-17; *see also* ECF No. 86 ("Def. Mem.") at 2 ("Nike's counterclaims do not assert ownership of the 'Pure

---

[1] The TAC presupposes knowledge of the factual background set forth in prior iterations of the complaint, but does not always include those allegations in the TAC itself.  Accordingly, in recognition of Plaintiff's status as a *pro se* litigant, the Court supplements this background section with allegations from each version of the complaint.  *See Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) ("It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants.").

Money' designation as a trademark").  Nike does, however, claim federal trade dress rights in the AJ4 product configuration.  TAC, ¶ 21; *see also* Am. Ans., ¶¶ 11-16 (describing Nike's trade dress regarding the AJ4 product configuration).

## PROCEDURAL BACKGROUND

Plaintiff's first three complaints asserted trademark infringement and dilution claims against Defendant for its use of the phrase "Pure Money" in marketing and promoting its footwear.  *See* ECF No. 1, ¶ 1; ECF No. 9 ("FAC"), ¶ 1; SAC, ¶ 1.  Specifically, Plaintiff alleged that Defendant's "unauthorized use" of the mark "Pure Money" in connection with its AJ4 line and upcoming "Air Jordan 3 Retro sneakers" created a significant "likelihood of confusion among consumers." *See, e.g.*, FAC, ¶¶ 1, 10-14.  Plaintiff asserted violations of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and analogous claims under New York law in pursuit of monetary damages and injunctive relief.  *See, e.g.*, FAC at 3-5.

Defendant's First Amended Answer raised a series of affirmative defenses, Am. Ans. at 6-9, and asserted its own trademark and dilution counterclaims against Russ and Denaro Puro LLC, *id.* at 19-26, ¶¶ 30-65.  As most relevant here, Defendant's "Lack of Priority" defense asserted that, to the extent it used the designation "Pure Money" as a trademark, Plaintiff's claims of such use infringing on his "DENARO PURO" mark were barred because Nike first used "Pure Money" approximately ten years before Russ or Denaro Puro LLC first used "DENARO PURO."  *Id.* at 6-7; *see also* Def. Mem. at 1-2 (describing chronology of events and

affirmative defense).  Defendant reasserted this defense in its subsequent Answer to Plaintiff's Second Amended Complaint.  *See* ECF No. 39 ("Sec. Am. Ans.") at 8.

Separately, Defendant's counterclaims pertain to the design of products promoted and sold by Russ and Denaro Puro LLC.  Defendant alleges that "Russ individually and through Denaro Puro, LLC, promotes and/or sells products on their website . . . and social media" that use Defendant's trademarked AJ4 product configuration without its authorization, likely causing confusion among consumers.  Am. Ans. at 14-16, ¶¶ 14-21.  Defendant's counterclaims do not include any allegations relating to the "DENARO PURO" designation, nor does Defendant assert that the mark itself infringes on any of its trademark rights.  *See id.* at 19-26, ¶¶ 30-65.

On January 21, 2026, Plaintiff filed his operative Third Amended Complaint, TAC, intentionally withdrew all his affirmative infringement and dilution claims, *see* ECF No. 76 ("Conf. Tr") at 16:7–17:22.[2]  In the Third Amended Complaint, Plaintiff alleges that Defendant claims "[in]consistent[ ]" and "overbroad" trademark rights in both the phrase "Pure Money" and its AJ4 product configuration, and that it "continue[s] to assert overbroad infringement threats

---

[2] The Third Amended Complaint includes as Plaintiffs both Russ and Denaro Puro LLC.  While Russ may represent himself *pro se*, it is well established that a *pro se* plaintiff may not represent an LLC.  *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Couns.*, 506 U.S. 194, 202 (1993) ("[T]he lower courts have uniformly held that 28 U.S.C. § 1654 . . . does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney.").  Russ was informed of this requirement, Conf. Tr. at 23:13-14, and agreed to remove Denaro Puro LLC as a plaintiff in this matter, *id.* at 23:15.  Accordingly, the Court *sua sponte* dismisses all claims purportedly brought on behalf of Denaro Puro LLC.

4

against Plaintiff[.]" TAC, ¶¶ 1, 16, 18-25, 28.  On the former point, Plaintiff claims that Defendant "asserts that it possesses exclusive, enforceable rights in 'Pure Money,' while simultaneously arguing that the phrase is descriptive," and that "Nike's claimed AJ4 trade dress is functional, overbroad, and lacks secondary meaning." *Id.*, ¶¶ 18, 41.

Plaintiff brings causes of action under the Declaratory Judgment Act, 28 U.S.C. § 2201; the Lanham Act, 15 U.S.C. § 1051 *et seq.*; New York state law; and common law.  *Id.*, ¶¶ 32-50.  Accordingly, Plaintiff seeks "a declaration of non-infringement" for his use of "DENARO PURO" (Count I); "a declaration that Nike's asserted rights in 'Pure Money' are limited and unenforceable against Plaintiffs" (Count II); "a declaration that Nike's AJ4 trade-dress claims are invalid and unenforceable" (Count III); and "a declaration" that "Plaintiffs' use of DENARO PURO does not blur or tarnish any famous mark and is unlikely to impair any distinctiveness" (Count V).  *Id.*, ¶¶ 34-35, 39, 43, 49.  Plaintiff also asserts a claim for unfair competition under New York common law based upon Defendant's "infringement threats" (Count IV).  *Id.*, ¶ 45.

Defendant filed a partial motion to dismiss on February 9, 2026, seeking dismissal of Counts I, II, and V for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and Count IV for failure to state a claim pursuant to Rule 12(b)(6).  Def. Mem. at 6-12.  On Counts I, II, and V—those relating to the alleged conflict between the "Pure Money" designation  and the "DENARO PURO" mark—Defendant argues that Plaintiff failed to allege facts sufficient to give rise to a

justiciable controversy. *Id.* at 7. Namely, because "[t]he TAC . . . does not—and indeed could not—include a single, factual allegation that Nike accused or even threatened to accuse Mr. Russ's use of his purported DENARO PURO word mark," Counts I, II, and V seek relief for circumstances that do not present a case of actual controversy. *Id.* On Count IV, Defendant argues that Plaintiff did not sufficiently allege either element necessary to plead unfair competition claims under New York common law. *Id.* at 10.

## LEGAL STANDARDS

### A.    Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

"A motion to dismiss for lack of subject matter jurisdiction may 'raise a facial challenge based on the pleadings, or a factual challenge based on extrinsic evidence.'" *U.S. Airlines Pilots Ass'n ex rel. Cleary v. U.S. Airways, Inc.*, 859 F. Supp. 2d 283, 296 (E.D.N.Y. 2012) (quoting *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996)). Where the defendant challenges the legal sufficiency of a complaint's allegations, the court must treat all factual allegations in the complaint as true and draw all reasonable inferences in favor of the complaining party. *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir.

6

2001).  However, where the jurisdictional challenge is fact-based, the defendant may "proffer[ ] evidence beyond the [p]leading," and the plaintiff "will need to come forward with evidence of their own to controvert that presented by the defendant if the affidavits submitted on a 12(b)(1) motion reveal the existence of factual problems in the assertion of jurisdiction." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (cleaned up).  "In that case, no presumptive truthfulness attaches to the complaint's jurisdictional allegations, and the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Zim Am. Integrated Shipping Servs. Co., LLC v. Sportswear Grp., LLC*, 550 F. Supp. 3d 57, 62 (S.D.N.Y. 2021) (cleaned up).

**B.      Rule 12(b)(6)**

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all factual allegations and draws all reasonable inferences in favor of the non-moving party.  *Romanova v. Amilus Inc.*, 138 F.4th 104, 108 (2d Cir. 2025).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [the standard] requires more than labels[,] conclusions, and a formulaic recitation of a cause of action's elements. . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The Court's charge in ruling on a Rule 12(b)(6) motion 'is merely to assess

the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Jennings v. Hunt Companies, Inc.*, 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004)).

## DISCUSSION

### A.    Standing

Defendant seeks dismissal of Counts I, II, and V of Plaintiff's Third Amended Complaint for lack of subject matter jurisdiction, arguing that the complaint fails to allege a case of actual controversy as required under the Declaratory Judgment Act. Def. Mem. at 6-10.  The Court agrees.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  As used in the Declaratory Judgment Act, "the phrase 'case of actual controversy' . . . refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted).

Whether the "case-or-controversy requirement" is satisfied depends on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant" relief.  *Id.* (citation omitted).  Disputes must

8

"admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (cleaned up).

"Where, as here, a plaintiff seeks a declaratory judgment of non-infringement of the defendant's *trademarks,* no actual case or controversy exists unless the plaintiff can show that the defendant *sought or threatened to seek* to prohibit plaintiff's use of its mark." *I.O.B. Realty, Inc. v. Patsy's Brand, Inc.*, No. 19-CV-2776 (AT), 2020 WL 2086096, at *2 (S.D.N.Y. Apr. 30, 2020) (emphasis added) (citing *Topp-Cola Co. v. Coca-Cola Co.*, 314 F.2d 124, 125 (2d Cir. 1963)).

At base, Counts I, II, and V of the Third Amended Complaint have two aims: to have the Court deem Plaintiff's use of the "DENARO PURO" mark in connection with his footwear brand non-infringing on Defendant's use of the "Pure Money" designation, and in so doing, to have the scope of both parties' respective trademark rights in "DENARO PURO" and "Pure Money" clarified. *See* TAC, ¶¶ 33, 35. 38-39, 49-50.

Yet there is no indication on this record that Nike has asserted any trademark rights in the "Pure Money" designation. To the contrary, during the January 6, 2026 conference, Defendant represented to this Court and in front of Plaintiff that it had "not asserted any affirmative claims saying Nike owns Pure Money as a trademark and that [Russ] is somehow infringing it. That's not been done in this case, and we, at this point, do not have any plans to [do so.]" Conf. Tr. at 22:5-8 (Miller). Plaintiff appears to have misconstrued Defendant's "Lack of

9

Priority" affirmative defense—raised in its now-moot responsive pleading, Sec. Am. Ans. at 8—as an affirmative claim against him.  Otherwise, it is unclear what the basis of Plaintiff's assertion that Defendant claims "exclusive, enforceable rights in 'Pure Money'" is.  TAC, ¶ 18; *see also* Def. Mem. at 2 ("Nike's counterclaims do not assert ownership of the 'Pure Money' designation as a trademark . . . .").  Plaintiff has not included any specific factual allegations which would suggest that Defendant has taken any affirmative action to assert ownership over the Pure Money mark.  *See I.O.B. Realty*, 2020 WL 2086096, at *2.

Second, Plaintiff has failed to adequately allege that Defendant "sought or threatened to seek" to prohibit Plaintiff's use of the "DENARO PURO" mark—or for that matter, his use of the "Pure Money" mark itself.  Plaintiff merely claims that Defendant has "continued to assert overbroad infringement threats against Plaintiffs, including demands to cease use of . . . descriptive terminology."  TAC, ¶ 28.  However, there is no indication in Plaintiff's pleadings or otherwise that Defendant has demanded that Plaintiff "cease use of" the "DENARO PURO" mark or "Pure Money" designation.[3]  In fact, Defendant acknowledges Plaintiff's use of both and declares under penalty of perjury that it "has not asserted (or even threatened to assert) that Mr. Russ's use of his purported DENARO PURO word

---

[3] The letter from Nike to Russ, attached to the Third Amended Complaint and presumably offered as evidence of Nike's alleged threat of enforcement, does not support Russ's position.  TAC, Ex. A.  Rather, it merely shows that, in response to Russ's cease-and-desist letter, Nike's counsel asserted that "Nike will defend itself accordingly."  *Id.*  The letter thus contemplates responding to Russ's potential enforcement action, but does not threaten to initiate one.

mark or even his use of the words 'Pure Money' infringe or dilute any trademark rights owned by Nike." ECF No. 87 ("Miller Decl."), ¶¶ 4-6; Def. Mem. at 7.

Plaintiff's threadbare and conclusory allegation that "Nike has asserted . . . enforcement threats based on its trademark . . . assertions," TAC, ¶ 30, in the face of the evidence in the record to the contrary, do not suffice to establish a justiciable controversy under the Declaratory Judgment Act. *See MedImmune*, 549 U.S. at 127. Because there is no actual dispute, or threatened dispute, between the parties regarding their uses of the "DENARO PURO" mark and "Pure Money" designation, Plaintiff has failed to show that "a case of actual controversy" exists. *See* 28 U.S.C. § 2201. Accordingly, Plaintiff has failed to establish subject matter jurisdiction, and Counts I, II, and V are dismissed pursuant to Rule 12(b)(1).

**B.    Rule 12(b)(6) Motion on Count IV**

Defendant moves to dismiss Count IV from the Third Amended Complaint pursuant to Rule 12(b)(6), arguing that "Count IV fails because Mr. Russ does not allege either of" the elements of unfair competition under New York common law. Def. Mem. at 10. Under New York common law, unfair competition is alleged through one of two theories: "palming off" or "misappropriation." *See CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 225-26 (S.D.N.Y. 2023) (describing both theories). "Palming off is the sale of the good of one manufacturer as those of another." *Id.* (cleaned up). "The second theory, misappropriation, prevents individuals from misappropriating the results of the skill, expenditures and labors of a competitor." *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247,

11

268 (E.D.N.Y. 2016) (cleaned up).  Moreover, to state a claim for unfair competition, a plaintiff must at least plead a likelihood of confusion and bad faith on the part of the defendant.  *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 35 (2d Cir. 1995); *see also Tri-Star Pictures, Inc. v. Unger*, 14 F. Supp. 2d 339, 363-64 (S.D.N.Y. 1998) ("demonstrating unfair competition under . . . [New York] common law" requires "show[ing] a likelihood of confusion or deception of the consuming public as to the source of the allegedly infringing product . . . *and* bad faith").

In this respect, Plaintiff alleges only that "Nike has asserted infringement threats exceeding the lawful scope of its rights, interfering with Plaintiffs' business relationships and creative expression."  TAC, ¶ 45.  This assertion is difficult to square with either theory of unfair competition, let alone the specific pleading requirements laid out in *Jeffrey Milstein*.  58 F.3d at 35.  Namely, Plaintiff does not allege that Defendant's use of the "Pure Money" designation or its sale and promotion of the AJ4 shoe line is likely to cause confusion among consumers.  Indeed, Plaintiff alleges the logical inverse: that "DENARO PURO differs [from "Pure Money"] in language, presentation, branding context, and commercial impression and is not likely to cause consumer confusion."  TAC, ¶ 34.

With respect to bad faith, Plaintiff relies upon Defendant's infringement counterclaim.  *See id.*, ¶¶ 26-29.  A claim asserted in litigation cannot form the basis for a claim of unfair competition.  *See Bayer Schera Pharma AG v. Sandoz, Inc.*, Nos. 08-CV-03710 (PGG), 08-CV-08112 (PGG), 2010 WL 1222012, at *7 (S.D.N.Y. Mar. 29, 2010) ("The weight of authority clearly holds that bad faith litigation-

12

including bad faith patent infringement litigation-does not give rise to an unfair competition claim under New York law.") (collecting cases).

"While *pro se* complaints are held to less stringent standards than those drafted by lawyers, . . . dismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Temple v. Hudson View Owners Corp.*, 222 F. Supp. 3d 318, 323 (S.D.N.Y. 2016). Accordingly, Count IV is dismissed.

## C.    Leave to Amend

Defendant finally argues that the Court should refuse Plaintiff leave to amend his complaint because further amendment would be futile.  ECF No. 90 at 6. Although Rule 15 does provide for liberal and permissive amendments of pleadings, *see* Fed. R. Civ. P. 15(a)(2), leave to amend can nonetheless be denied upon grounds of undue delay, bad faith, or futility of amendment, *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021).  In the present case, any further amendment would be futile.  Plaintiff has not identified any additional allegations that could cure the fundamental deficiencies of his pleading.  Accordingly, although the Court recognizes the special solicitude it must afford *pro se* plaintiffs, the Court denies further leave to amend.  *See Barnett v. Diaz*, 19-CV-00415 (NSR), 2019 WL 6340960, at *1-2 (S.D.N.Y. Nov. 26, 2019).

## CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss Counts I, II, IV, and V of the Third Amended Complaint is **GRANTED**.  Additionally, all claims

purportedly brought by Denaro Puro LLC are **DISMISSED**.  The Clerk of Court is directed to terminate ECF No. 85.

      SO ORDERED.

Dated:  May 4, 2026
       New York, New York

_____
      JEANNETTE A. VARGAS
      United States District Judge

14